UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JONES, WALKER, WAECHTER,                    CIVIL ACTION
POITEVENT, CARRERE &
DENEGRE, LLP


VERSUS                                      NO: 09-6057


THE CHUBB CORPORATION D/B/A                 SECTION: "A" (4)
THE CHUBB GROUP OF INSURANCE
COMPANIES & FEDERAL
INSURANCE CO.


### ORDER AND REASONS

Before the Court are a **Motion for Summary Judgment (Rec. Doc. 20)** filed by defendant Federal Insurance Co. ("Defendant" or "Federal"),[1] and a **Cross-Motion for Partial Summary Judgment (Rec. Doc. 18)** filed by plaintiff Jones, Walker, Waechter, Poitevent, Carrére & Denégre, LLP ("Plaintiff" or "Jones Walker"). Both motions are opposed. The motions, set for hearing on August 18, 2010, are before the Court on the briefs without oral argument. For the reasons that follow, Plaintiff's motion is DENIED and Defendant's motion is GRANTED.


I.   **BACKGROUND**

---

[1] Federal submits its motion for summary judgment on behalf of itself and the erroneously sued The Chubb Corporation and Chubb Group of Insurance Companies. For simplicity, all references in this Order and Reasons will be to "Federal" notwithstanding that in some instances a more precise description of the facts might require reference to Chubb.

This case presents a coverage dispute as to whether Federal's policy covers business income losses that Jones Walker claims to have sustained following Hurricane Gustav.  The parties agree that the facts pertinent to the coverage issue are not in dispute and that a ruling by the Court will narrow the scope of anticipated discovery and expert evidence.  (Rec. Doc. 34).  All pre-trial deadlines are currently stayed pending the Court's resolution of the parties' cross motions.

Federal issued to Jones Walker Policy No. 3583-81-11 HOU ("the Policy") with a policy period of June 12, 2008, through May 1, 2009.  (Rec. Doc. 19, Joint Stip. ¶ 5).  The Policy contains, in part, Business Income With Extra Expense Insurance For Law Firms, which includes Civil Authority coverage, subject to the terms and conditions as set forth in the Policy.  (Id. ¶ 6).

Hurricane Gustav moved across the Caribbean Sea as a tropical storm from Wednesday, August 27, 2008, through Thursday, August 28, 2008.  (Id. ¶ 2).  On August 30, 2008, Mayor C. Ray Nagin issued a mandatory evacuation order effective August 31, 2008, commencing at 12:00 p.m. for the East Bank of Orleans Parish.  (Id. ¶ 8).  The Mayor cited anticipated high tides and the possibility of hurricane force winds and widespread severe flooding among those factors that necessitated his order, and the declaration of a state of emergency.  (Id. Exh. C).  Pursuant to

the order, every person was ordered to immediately evacuate the City of New Orleans.  (Joint Stip. Exh. C).  On its face, the order was to expire the earlier of five days following the commencement of the order or the declaration by the Governor that the state of emergency no longer existed.  (Id.)

On September 2, 2008, Mayor Nagin issued a "Promulgation of Emergency Orders and Amended Mandatory Evacuation" which rescinded the prior evacuation order effective September 4, 2008, at 12:01 a.m.  (Joint Stip. ¶ 12).  After this point the evacuation would then be voluntary.  (Id. Exh. D).

Jones Walker contends that its employees were prohibited from accessing its New Orleans office between 12:00 noon on August 31, 2008, and 12:01 a.m. on September 4, 2008, which resulted in business income losses.  Jones Walker submitted a proof of loss to Federal seeking coverage under the Policy's Civil Authority provision.  Federal denied Jones Walker's claim and this litigation ultimately ensued.  Jones Walker's current business interruption claim relates only to its New Orleans office located at 201 St. Charles Avenue in New Orleans.  (Joint Stip. ¶ 14).  Jones Walker seeks to recover covered losses for business income, as well as statutory penalties, general and special damages, and attorney's fees.  This matter is scheduled to be tried to the bench on December 6, 2010.

At issue in the cross motions before the Court today is the question of whether Jones Walker's claim for business income loss following Hurricane Gustav falls within the Civil Authority coverage of its policy.  Plaintiff contends that coverage was triggered when the Mayor, in response to physical damage in the city, including the Central Business District and the area within one mile of Jones Walker's offices, issued the amended evacuation order on September 2, 2008.  Federal, on the other hand, contends that coverage was never triggered because the Mayor issued the mandatory evacuation order prior to landfall in *anticipation* of *possible* harm from the storm and not from damage to property within one mile from Jones Walker's New Orleans office.[2]

The coverage for business income is subject to a 96 hour waiting period.  Jones Walker argues that the waiting period commenced on August 31, 2008, at 12:00 noon when the first evacuation order became effective and ended on September 4, 2008, at 12:00 noon (96 hours later), such that all losses sustained after that point are covered.  In opposition, Federal argues that

_____

[2] Jones Walker's complaint suggests that it intended to allege that coverage was triggered effective August 31st via the Mayor's August 30th order because Jones Walker alleges that Civil Authority coverage "<u>continued</u> on and beyond September 1, 2008" which is when the storm made landfall and therefore the earliest time that damage was sustained.  (Comp. ¶ 34 (emphasis by Jones Walker)).  Jones Walker's memoranda submitted in conjunction with the pending motions clarifies that it actually relies upon the Mayor's September 2nd order as the one triggering coverage.

even if the 96 hour waiting period expired on September 4th as Jones Walker contends, there is still no coverage because the evacuation order was lifted before the Policy's 96 hour waiting period expired.

Federal also moves for summary judgment on Jones Walker's bad faith claim.

## II.  <u>DISCUSSION</u>

Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."  <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 206 (5th Cir. 2007) (<u>quoting</u> <u>Cadwallader v. Allstate Ins. Co.</u>, 848 So.2d 577, 580 (La.2003)).  "The words of a contract must be given their generally prevailing meaning."  <u>Id.</u> (<u>quoting</u> La. Civ. Code art. 2047; <u>see also</u> <u>Cadwallader</u>, 848 So.2d at 580).  "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."  La. Civ. Code art. 2046.  "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written."  <u>Katrina Canal Breaches</u>, 495 F.3d at 207 (<u>quoting</u> <u>Cadwallader</u>, 848 So.2d at 580).

Where, however, an insurance policy includes ambiguous

provisions, the "[a]mbiguity ... must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions." <u>Katrina Canal Breaches</u>, 495 F.3d at 207 (<u>quoting La. Ins. Guar. Ass'n v. Inter. Fire & Cas. Co.</u>, 630 So.2d 759,763 (La. 1994); La. Civ. Code art. 2050 ("Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.")). "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La. Civ. Code art. 2048. "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La. Civ. Code art. 2049.

The Civil Authority section of the Policy provides in pertinent part:

We will pay for the actual:

- business income loss

you incur due to the actual impairment of your operations, **directly caused by the prohibition of access** to

- your premises

**by a civil authority**.

**This prohibition of access by a civil authority must be the direct result of direct physical loss or damage to property away from such premises** or such dependent business premises by a covered peril, provided such property is within:

6

- ***one mile***

from such premises or dependent premises . . . .

The coverage for:

A.   Business income will begin:

    1.   ***after the applicable waiting period shown in the Declarations for Business Income expires***;[3] or

    2.   24 normal business hours following the time the civil authority prohibits access,

    whichever is the longer.

***The Waiting Period shown in the Declarations will begin immediately following the time the civil authority prohibits access.***

The coverage will apply for a period of:

- ***up to 30 consecutive days after coverage begins; or***
- ***when your business income loss ends***,

whichever occurs first . . . .

This Additional Coverage does not apply if the direct physical loss or damage is caused by or results from earthquake or flood.

(Joint Stip. Exh. A at FED-JW-384-385) (emphasis added).

The Policy's plain language requires that the civil authority prohibit access as a "direct result of direct physical loss or damage to property" within one mile of the 201 St. Charles Ave. premises.  The Policy does not insure against impairment of operations that occurs simply because a civil

---

[3] The applicable waiting period shown in the Declarations for Business Income is 96 hours.  (Joint Stip. Exh A. at FED-FW-508).

7

authority prohibits access *unless* the civil authority order meets
the requirements of the policy--one of those requirements is a
nexus between the order and certain physical damage.  Reading the
Civil Authority section as a whole, it is clear that it was not
written with the expectation that a civil authority order
prohibiting access would issue *before* the property damage that
forms the basis of the order actually occurs.  The direct nexus
between the damage sustained and the order that the policy
requires suggests that the Policy was designed to address the
situation where damage occurs and the civil authority
*subsequently* prohibits access.  Although those of us living in
the hurricane-plagued gulf coast region are not strangers to the
reverse situation, unarguably the coverage was written for the
far more likely sequence of events in that damage occurs and then
a civil authority prohibits access as a result.  That is not to
say that coverage cannot be triggered in the hurricane setting
where the normal sequence of events is reversed but not at the
expense of strict adherence to the Policy's requirements.

Clearly, the Mayor's August 30th evacuation order did not
trigger coverage because although it prohibited access, it did
not do so based on property damage--a clear requirement under the
Policy.  The September 2nd order, which Jones Walker
characterizes as an order extending the mandatory evacuation

imposed by the August 30th order, was an order continuing the
extant prohibition of access imposed by the August 30th order.
The September 30th order rescinded the prohibition on access
effective 12:01 a.m. on September 4th--one day *earlier* than when
the prohibition imposed by the August 30th order would have
expired on its own.[4]  The September 2nd order is arguably one that
could trigger Civil Authority coverage because it prohibits
access to the Jones Walker premises and does so in light of
damage sustained throughout the City of New Orleans, assuming
that the damage sustained throughout the City includes property
damage to something within one mile of Jones Walker's offices.[5]
For purposes of the cross motions before the Court today, the
Court will assume that all of the requirements necessary for
Civil Authority coverage were present when the Mayor issued the
September 2nd order.  The Court now turns its attention to the
two potentially dispositive issues of the 96 hour waiting period,

---

[4] The order also would have expired if the Governor had
declared that the state of emergency no longer existed but it is
not clear if that had occurred during any time pertinent to the
Court's analysis.

[5] Federal does not really take issue with Jones Walker's
assertion that a sufficient nexus exists between the September
2nd order and damage sustained in the area of the Central
Business District, including within one mile of Jones Walker's
downtown office.  Jones Walker has submitted a Nola.com video
(Exh. J3) in support of its contention that property damage
within one mile of its premises necessitated the Mayor's
September 2nd order.

and the duration of coverage.

Pursuant to the express terms of the Policy, coverage for business income does not begin until after the 96 hour waiting period expires.  (Joint Stip. Exh. A at FED-JW-385).  The generally applicable waiting period for business income loss states that the waiting period shown in the Declarations (in this case 96 hours) "begins immediately following the time of the covered direct physical loss or damage."  (Id. at FED-JW-389). However, the Civil Authority section, which does not involve *covered* direct physical loss, states that the 96 hour waiting period "will begin immediately following the time the civil authority prohibits access."  (Id. at FED-JW-385).

Jones Walker takes the position that this last quoted sentence, which is silent on the issue of property damage, renders the timing of physical loss or property damage irrelevant for purposes of the waiting period applicable to Civil Authority coverage.  Thus, according to Jones Walker, the 96 hour waiting period commenced on August 31st at 12:00 noon when the Mayor's first order prohibited access, and continued until September 4, 2008, at 12:00 noon, this notwithstanding that the earliest date that coverage attached would have been September 2nd when the Mayor issued the second order.

Jones Walker's interpretation of the waiting period results

10

from reading the statement "will begin immediately following the time the civil authority prohibits access" myopically without regard to the Civil Authority section as a whole.  The Civil Authority section is not concerned with prohibitions on access by civil authorities in the abstract or those that do not trigger coverage under the Policy.  The Policy is resoundingly clear that coverage under the Civil Authority section requires not only an order prohibiting access but also physical loss within one mile of the office *and* a nexus between the prohibition order and the physical loss.  It is unreasonable to interpret the 96 hour waiting period as commencing when the requirements for coverage under the section are not met.

The only reasonable interpretation of the "will begin immediately following the time the civil authority prohibits access" language is that it functions to clarify that unlike other business income coverages that trigger with property damage, Civil Authority coverage requires property damage *and a civil authority order*.  In other words, coverage does not attach simply because property damage in the area *in fact* results in a prohibition of access.  As noted above, the Civil Authority section contemplates a sequence of events where direct physical loss or damage to property occurs and then an order prohibiting access *because of that damage* issues.  The waiting period "will

11

begin immediately following the time the civil authority prohibits access" clearly means that coverage begins, not when the property damage is sustained that might in fact prohibit access, but only when the civil authority prohibits access, again based on the normal sequence of events.  It would have certainly been clearer if the statement read "will begin immediately following the time the civil authority prohibits access following the direct physical loss" but this additional caveat is implicit in light of the coverage requirements.  In sum, the Court is persuaded that the 96 hour waiting period began no earlier than when the September 2nd order issued.[6]  Therefore, the 96 hour waiting period ended some time on September 6, 2008.

Whether the waiting period ended on September 6th, as the Court is convinced, or on September 4th at 12:00 noon, as Jones Walker contends, it ended *after* the point in time when the Mayor rescinded the prohibition order, which was September 4th at 12:01 a.m.  Federal contends that under the circumstances Jones Walker is entitled to no recovery for lost business income.  Jones Walker argues that once coverage triggers it only ends at the

---

[6] The September 2nd order issued while the mandatory evacuation imposed by the first order was still in effect so there is no effective date/time on it as was the case for the first order.  The order was filed on September 2nd at 8:42 p.m. so the 96 hour waiting period would presumably start from that point in time.

12

earlier of the expiration of 30 days or when its business income losses ended, _i.e._, at the point when all of its time-keepers returned to work.

Jones Walker's interpretation is contrary to the Policy language.  Civil Authority coverage applies to impairment of operations "directly caused" by prohibition of access to the premises by a civil authority.  Once the evacuation order was rescinded effective September 4th at 12:01 a.m., any impairment of operations was no longer _directly_ caused by a civil authority's prohibition of access.  The fact that the policy expressly includes two measures of time when coverage will terminate _assuming that the requirements for coverage remain in effect_, does not suggest that once coverage attaches it is ongoing notwithstanding that the very requirements for that coverage are no longer met.  The only reasonable interpretation of the policy is that coverage terminated effective September 4th at 12:01 a.m. when the order upon which coverage was based was rescinded.  Therefore, whether the waiting period ended on September 6th or on September 4th at 12:00 noon, it ended _after_ the point in time when coverage ended.  Thus, Federal is not liable under the Policy for Jones Walker's business income losses.

Jones Walker points out that Federal's position in this case

contradicts the position that it took following Hurricane Katrina when Jones Walker made a similar claim for business income loss. Jones Walker submits a letter from the adjuster who handled its Katrina claim and points to language in that letter that supports Jones Walker interpretation of Civil Authority coverage. (Plaintiff Exh. J7 at 2).

As Federal correctly notes, Jones Walker's Katrina claim was a different claim that involved different facts than those presented here.  Moreover, to the extent that Jones Walker is suggesting that some form of estoppel should apply to compel coverage contrary to the policy language, the application of the doctrine of estoppel is not permitted in the area of insurance law to extend or enlarge coverage beyond that set forth in the policy.  Hogan v. State Farm Auto. Ins. Co., 649 So. 2d 45, 53 (La. App. 1st Cir. 1994) (citing Graham Res. v. Lexington Ins., 625 So. 2d 716, 719-20 (La. App. 1st Cir. 1993)).

In sum, the undisputed facts establish that there is no coverage for Jones Walker's claim.  Because there is no coverage under the Policy, Federal is not liable on the bad faith claim. Federal is entitled to judgment as matter of law.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Cross-Motion for Partial Summary Judgment (Rec. Doc. 18)** filed by plaintiff Jones, Walker,

14

Waechter, Poitevent, Carrére & Denégre, LLP is **DENIED**;

 **IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 20)** filed by defendant Federal Insurance Co. is **GRANTED**.  Plaintiff's complaint is **DISMISSED** with prejudice.

 October 11, 2010

        _____
          JAY C. ZAINEY
      UNITED STATES DISTRICT JUDGE